UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CR-134-1

**FILED**
JUL 07 2014
JULIE A. RICHARDS, CLERK
US DISTRICT COURT, EDNC
BY ___EM___ DEP CLK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL INFORMATION |
| ) | Fed. R. Crim. P. 7 |
| BARRY LEE WALLS, JR. ) | |
| ) | |

The United States Attorney Charges that:

### COUNT ONE

At all times relevant hereto,

1. Defendant BARRY LEE WALLS, JR. (hereinafter referred to as "WALLS") was a Sergeant First Class (E-7) in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

2. From July 2009 through January 2010, WALLS was deployed to Afghanistan with a Special Forces Group split team under the command of the Combined Joint Special Operations Task Force. During defendant WALLS' deployment to Afghanistan, Chief Warrant Officer Deric Harper was the officer-in-charge. Other team members included Sergeants First Class Cleo Autry, William Chamberlain and Jeffrey Cook.

3. During the deployment, this team had access to various United States federal funds earmarked for the operation and reconstruction efforts overseas. Specifically, the team had access

to Operation Funds ("OP funds"), Commander's Emergency Response Funds ("CERP funds") and 1208 funds. OP funds allow deployed units to purchase mission critical items that cannot otherwise be obtained through military supply systems. CERP funds are used to pay for humanitarian projects intended to benefit the local Afghan populace, such as public roads, schools and medical clinics. 1208 funds are used by Special Operations Forces to support counterterrorism operations.

4. Each member of the team was given an assignment with respect to these funds to assure the monies were properly accounted for and to prevent any misuse.

5. With respect to the OP funds, Cook was the Field Ordering Officer ("FOO"). As such, Cook was responsible for contracting with local vendors for various mission requirements. Autry was the Paying Agent ("PA"). Autry was responsible for safeguarding the funds, paying the local vendors to whom Cook contracted with and accounting for the expenditure of OP funds. It is standard practice for the FOO and PA to be present at each transaction. In addition, the FOO, PA and vendor are required to sign the receipt evidencing the payment, known as a SF-44. The receipts were subsequently submitted by Autry to the Finance Office at Bagram Airfield, in Afghanistan.

6. With respect to the CERP funds, Cook was the Project

2

Purchasing Officer ("PPO") and Autry was the PA. Harper was the Initiating Officer who signed the purchase requests submitted to obtain funding from the Finance Office. As with the OP funds, Cook, Autry and the vendors were required to sign the receipts for the Finance Office.

7. With respect to the 1208 funds, defendant WALLS was the PA. Harper signed the receipts as the witness of the 1208 expenditures.

8. Defendant WALLS currently resides in the Eastern District of North Carolina.

## THE CONSPIRACY

9. Beginning in or about July 2009, the exact date being unknown, and continuing up to August 2012, the exact date being unknown, within the Eastern District of North Carolina, within Afghanistan, and elsewhere, defendant WALLS did knowingly combine, conspire, confederate and agree with others known and unknown to the United States Attorney to commit offenses against the United States, to wit

3

to knowingly and unlawfully embezzle, steal, purloin, and convert to his use, and the use of another, things of value of the United States and a department and an agency thereof, the value of which in the aggregate did exceed the sum of $1,000, in violation of Title 18, United States Code, Section 641.

## PURPOSE OF THE CONSPIRACY

10. It was the purpose of the conspiracy to embezzle, steal and convert United States federal funds earmarked for war operational and reconstruction efforts and to send or transport the money back to the United States through various means.

## MANNER AND MEANS

11. In furtherance of the conspiracy, defendant WALLS, along with others, employed the following manner and means:

   a. Withdrew federal funds in the form of Afghan currency, known as Afghanis, from the Finance Office at Bagram Airfield, in Afghanistan.

   b. Took the Afghanis to Forward Operating Base Fenty ("FOB Fenty"), in Jalalabad, Afghanistan.

   c. Embezzled, stole and converted a portion of the Afghanis, which were equally shared among all five members of the team.

   d. Knowing that they would be accountable for all of the federal monies spent in connection with operational and

reconstruction efforts, defendant WALLS and his co-conspirators falsified receipts to conceal the amount of monies stolen, which they submitted to the Finance Office.

    e.    Converted the stolen Afghanis into United States dollars.

    f.    Used a portion of the stolen United States dollars to purchase United States Postal money orders ("PMO").

    g.    Mailed PMOs or stolen United States dollars to the U.S.

    h.    Transported PMOs or stolen U.S. dollars on their person and in their luggage back to the U.S.

    i.    Made false statements to federal law enforcement officers.

## OVERT ACTS

8.    In furtherance of the conspiracy, and to effect the object thereof, there were committed by at least one of the co-conspirators in the Eastern District of North Carolina and at United States military installations in Afghanistan, at least one of the following overt acts, among others:

    a.    On or about October 6, 2009, defendant WALLS, at FOB Fenty, purchased a PMO with $850 of stolen federal funds.

    b.    On or about November 10, 2009, defendant WALLS, at Bagram Airfield, used $2,600 of stolen federal funds to purchase

5

three PMOs with face values of $600, $1,000 and $1,000, respectively.

  c. On or about December 23, 2009, defendant WALLS, at FOB Fenty, used $2,700 of stolen federal funds to purchase three PMOs, with face values of $700, $1,000 and $1,000, respectively.

  d. On or about July 20, 2012, defendant WALLS falsely stated to federal law enforcement officers that he purchased between $25,000 and $35,000 in PMOs while deployed in Afghanistan with cash he won through gambling.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE NOTICE

The defendant is given notice of the provisions of 18 U.S.C. Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461, that all of his interest in all property specified herein is subject to forfeiture.

As a result of the foregoing offense as alleged in this criminal information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The forfeitable property includes, but is not limited to:

currency in the amount of $200,000;

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

 (1) cannot be located upon the exercise of due diligence;

6

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in accordance with 18 U.S.C. § 981.

THOMAS G. WALKER
United States Attorney

BY: SUSAN B. MENZER
Assistant United States Attorney
Criminal Division

7